The opinion of the court was delivered by
Fenner., J.
Defendant was prosecuted under City Ordinance No-92, C. S., which reads as follows:
íl 1. That it shall be unlawful for any person or persons to sell-. *1111 barter, exchange, or otherwise dispose of any lottery ticket, or token, policy, combination, device or certificate, or fractional part thereof, in any lottery drawn or to be drawn in or out of the City of New Orleans, unless the same be duly authorized by the laws of the State of Louisiana.
“ That any person or persons violating the provisions of this ordinance shall, upon conviction before the recorder within whose jurisdiction the offence was committed, be condemned by said recorder to pay a fine of $25 for each offence, and in default of payment to imprisonment for not less than twenty nor more than thirty days.”'
The charge as set forth in the affidavit is that on~a given day in a given month, in the year 1890, “ at about 8 o’clock P. M., at the corner of Claiborne and Mandeville streets, within the jurisdiction of this court, one A. Boniel did then and there wilfully and unlawfully violate C. O. 92 C. S. in this, to-wit: By selling illegal prize packages of tea.”
The evidence is substantially: The business of the defendant is. conducted in the following manner: Upon a counter, behind which he stands with his clerks, are placed a large number of sealed envelopes, containing what he terms “ Enterprise Tea,” of the value-of five cents. In addition to the tea some of these envelopes contain a ticket naming and entitling the holder to some article or other,, such, for example, as a silk hankerchief, a little lard, a turkey, a chicken, etc., and called “ prizes ” by the witnesses. Other envelopes contain nothing but the ‘ ‘ Enterprise Tea, ’ ’ and these are termed “blanks” by the witnesses. The purchaser, upon the payment of five cents, is at liberty to select an envelope from any of the lots exposed upon the counter; and if the envelope contains besides the-tea a ticket, the holder of the ticket is entitled to the article mentioned upon it, and the article, which is the prize, is handed the purchaser and holder by defendant.
Against further proceedings before the recorder in the prosecution of defendant because of the matters against him in the said1 affidavits presented and charged, these objections were urged:
1. That no offence is set out in the affidavit.
2. That the ordinance is unconstitutional in that it undertakes, by arbitrarily fixing the penalty, to deprive the recorder of the discretionary power vested in him by a statute of the State.
*1112 3. That the facts proven amount to no offence, as the ordinance is ■only leveled at the conduct of lotteries to be drawn in the city of New Orleans or elsewhere.
4. That there is no law upon the statute -books (April, 1890) authorizing the' city of New Orleans to impose imprisonment for the violation of an ordinance in default of the payment of the fine imposed. Transcript, pp. 8, 9.
He was sentenced on each affidavit to pay a fine of $25, and in default of payment to imprisonment for twenty days, from which he prosecutes the present appeal.
We shall consider his objections seriatim.
1. He was charged with violating Ordinance 92 “by selling illegal prize packages of tea.” The time, place and date of the act complained of are specified, and we think the charge sufficiently advised ■defendant of the offence and the nature thereof. Violations of municipal ordinances are not usually or properly regarded as crimes, .in the sense in which that word is commonly used, which embraces ■only offences against the public criminal statutes of the State, and the laws regulating forms of proceeding and the constitutional provisions relating to the latter do not generally apply to the former. State vs. Henchert, 42 An. 270; Mener vs. Monroe, 35 An. 1192; 1 Dillon Munc. Corp., Sec. 432, et seq.
2. The next objection is that the ordinance violates- Section 12 of ■the Act No. 131 of 1877, which declares: “That the said recorders (of New Orleans) shall have power and authority to enforce all ordinances of the city of New Orleans, and shall have power for violation of the same to impose fines not to exceed $25 for each offence, and in default of payment to sentence the party fined to imprisonment for not more than thirty days.”
The complaint is that this statute was intended to vest recorders with discretion as to the penalty, within the limits fixed, regardless of the penalty fixed by the ordinance, and that the ordinance, in fixing a penalty even within those limits, deprives the recorder of his discretion and is thus illegal. We think it very clear that the statute quoted conferred upon recorders, primarily, the power to enforce all city ordinances, and only secondarily limited the penalties which they should have power to impose. If the ordinance did not prescribe ■the. measure of the penalty, then perhaps the recorder might, in his *1113 discretion, fix the penalty within the limits prescribed; but if the ordinance itself fixes the penalty not exceeding the limits referred to, then the recorder must enforce the ordinance, and can not himself violate the same by imposing a greater or a less penalty.
The city of New Orleans has always had authority to enforce her legal ordinances by the imposition of 'fines and by imprisonment in default of payment. Such power was expresely granted in the charter of 1870. Act 7, Ex. Sess. 1870, Sec. 12. That section authorized fines not exceeding $100, and in case of non-payment imprisonment not exceeding thirty days. The enforcement of such ordinances could only be claimed before the recorders of the city. When in Act No. 131 of 1877 the Legislature limited the power of recorders to imposing fines not exceeding $25, the practical effect was to limit to the same extent the power of the city, because she could not collect a fine exceeding $25.
Therefore, prior to the passage of the city charter, the law was that the city had the right, through her recorders, to enforce her ordinances by fines not exceeding $25, and in case of non-payment, by imprisonment not exceeding thirty days. Nothing in the city charter of 1882 is in conflict or inconsistent with these prior statutes, and the law then existing was not repealed or affected thereby. State vs. Natal, 39 An. 439.
The sufficiency of these prior statutes was no doubt the reason why it was deemed unnecessary to embody their provisions in the new charter of 1882.
The Act No. 41 of 1890 has not, in our opinion, changed the prior law on this subject, except in so far as it authorizes both fine and imprisonment. It was passed after the decision of the court below in this case, and was, no doubt, framed to silence for the future such objections as those here urged.
We are clearly of the opinion that the city had authority to fix the penalty in her ordinance, and that the recorder only performed his duty in sentencing defendant accordingly. State ex rel. Joseph vs. Recorder, 42 An.
3. The business of defendant, as exhibited by the evidence, was undoubtedly a violation of the ordinance.
A lottery is “ a distribution Of prizes and blanks by chance; a *1114 game of hazard, in which small sums are ventured for the chance of obtaining a larger value, either in money or in other articles.” .Worcester’s Die.
“ A scheme for the distribution of prizes by lot or chance.” Webster’s Die.
“ Any scheme whereby one, on paying money or other valuable thing to another, becomes entitled to receive from him such a return in value or nothing, as some formula of chance may determine.” Bishop Stat. Cr., Sec. 952.
These definitions completely cover the offence proved against defendant. Frequent judicial interpretation confirms this view. A case arose in Illinois identical with the instant one. The defendant was conducting what he termed a “gift sale” establishment. He kept upon his desk a box filled with envelopes, purporting to contain valuable recipes and popular songs, and also a card descriptive of some one of various articles of different values. . The price of the envelopes was 25 cents, and the purchaser had the right to buy for §1 the article described on his ticket, which might be worth hundreds of dollars or very little. This scheme was held to be a lottery, and the sale of the envelopes to be the sale of a “lottery ticket” within the terms of the statute. Dunn vs. People, 40 Ill. 465.
In another case the defendant sold, at 5 cents each, packages of “prize candy,” some of which contained coupons entitling the purchaser to' a small sum of money on presentation at the counter. Held, to be the “setting up of a lottery” prohibited by the statute. State ex rel. Reaslez vs. Sheriff, 10 Phila. 203.
In another, defendant sold “ prize candy” in boxes for 50 cents, each box represented to contain a prize of money or jewelry of large or small value, the purchaser selecting his box in ignorance of its contents. Held, to be a “lottery device” forbidden by the statute. Holloman vs. State, 2 Texas App. 610; see also Chavannah vs. State, 49 Ala. 396; Com. vs. Wright, 137 Mass. 250; Negley vs. Devlin, 12 Abb. Pr. (N. Y.) 210; Hull vs. Ruggles, 65 Barb. 432; State vs. Clark, 33 N. H. 329; State vs. Bryant, 74 N. C. 583.
4. The last objection of defendant is disposed of by what we said under the second. Power given to the city to enforce her ordinances by fines, if unattended with power to imprison in default of payment, would be in most cases nugatory, since the impecunious. *1115 criminal would regard such a penalty as a delicious joke, and snap Ms fingers in the face of impotent justice. While this would not justify us in recognizing the existence of a power not granted, however necessary, it lends force to our construction of the statutes on the subject.
Judgment affirmed.